**THERMICE CORPORATION, Appellee,**

v.

**VISTRON CORPORATION, Standard Oil Chemical Company (formerly Vistron Corporation), Appellant.**

No. 86–1562.

United States Court of Appeals, Third Circuit.

Argued May 21, 1987.

Decided Oct. 29, 1987.

---

Larrick B. Stapleton (argued), Robert G. Raymond, Fell & Spalding, Philadelphia, Pa., for appellant.

William M. Barnes (argued), Bonnie Mac-Dougal Kistler, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellee.

Before SLOVITER, BECKER and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

This appeal arises from a district court's order which found appellant Vistron Corporation (Vistron) in civil contempt. The civil contempt order resulted from the district

court's determination that Vistron had violated an earlier order of the court which had required Vistron to specifically perform its contract with appellee Thermice Corporation (Thermice). We affirm.

## I.

Vistron manufactures carbon dioxide, which it sells to customers such as Thermice. On October 8, 1970, Vistron and Thermice entered into a contract wherein Vistron was to supply Thermice with carbon dioxide commencing in early 1971. The original contract provided that Vistron would supply Thermice with stated quantities of carbon dioxide at a specified price for ten years. The contract also obligated Vistron to provide the carbon dioxide for an additional five years unless either party canceled on six months written notice.

In 1979, Thermice brought an antitrust and contract damage action against Vistron in the district court. One of the issues in that action involved Vistron's attempt to get a "for cause" cancellation of the 1970 contract because of Thermice's failure to make timely payments. Thermice sought an injunction to prevent Vistron from canceling the contract. On May 15, 1981, the district court entered an order enjoining Vistron:

> to specifically perform its contract with Thermice Corporation dated October 8, 1970, as amended January 1, 1977, to supply liquid and solid carbon dioxide to Thermice Corporation pursuant to the terms of said contract until the termination date set forth in the contract (December 30, 1990), or until said contract has been canceled or otherwise terminated in accordance with its provisions, or until further Order of this Court.

Appendix at 25.

As the district court order indicated, the original agreement between Vistron and Thermice had been amended on January 1, 1977. Among other things, the 1977 amendment changed the period of the contract. The 1977 amendment provided, in relevant part: "The period of the Contract as provided for in paragraph 4 thereof shall be extended for an additional ten (10) years

from and after January 1, 1981, so that the period will continue until December 30, 1990, and all contract years commencing with the effective date of this amendment shall commence January 1, 1977." Appendix at 21. It is the exact nature of that change that is at issue in this appeal.

The instant action arose as a result of a letter dated April 25, 1986, which Vistron sent to Thermice. In its letter, Vistron stated that, pursuant to the contract, it was giving Thermice six months notice of its intent to cancel the contract. Thermice took the position that the period during which the contract permitted either party to unilaterally cancel without cause (after giving six months notice) had been modified by the 1977 amendment, and that this period would not begin until after December 30, 1990. On the other hand, Vistron contended that the 1977 amendment had not changed the period specified in the original contract during which either party could cancel without cause, and that such period therefore began on December 30, 1980. Thermice brought suit in the district court seeking a civil contempt order against Vistron, arguing that Vistron's attempt to cancel the contract prior to 1990 was a violation of the district court's injunctive order of May 15, 1981.

On July 16, 1986, the district court held a hearing to determine whether Vistron's letter, notifying Thermice of its attempt to cancel without cause, was in contempt of the court's May 15, 1981 injunctive order. Both parties argued their interpretation of the contract to the court. The court stated that it would accept short additional memoranda on the meaning of the contract, and indicated that it saw no need for testimony on the question. Neither party voiced any objection to this procedure.

In an opinion filed August 7, 1985, the district court concluded that the contract was clear and unambiguous, that Vistron could not cancel without cause prior to December 1990, and that Vistron's attempt to give Thermice six months notice of cancellation was in civil contempt of the May 15, 1981 order. The district court entered

an order to that effect, and this appeal followed.

## II.

█ Before considering the merits of Vistron's arguments, we must determine whether the judgment issued by the district court constitutes an appealable order. Although not briefed by either party, we cannot ignore matters that bring into question the existence of federal jurisdiction. *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1155 (3d Cir.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 2463, 95 L.Ed.2d 872 (1987); *Knight v. Brown Transport Corp.,* 806 F.2d 479, 483 (3d Cir.1986).

█ In the absence of certain delineated circumstances, civil contempt orders without more are not ordinarily appealable. *See generally Halderman v. Pennhurst State School & Hospital,* 673 F.2d 628, 636 (3d Cir.1982) (in banc), *cert. denied,* 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984); *Latrobe Steel Co. v. United Steelworkers,* 545 F.2d 1336, 1340 (3d Cir.1976); *Cromaglass Corporation v. Ferm,* 500 F.2d 601, 604 (3d Cir.1974) (in banc). However, here it is clear that the district court's order, although titled as a contempt order, should properly be construed as a declaratory judgment.

The district court's order entered August 7, 1986 reads, in relevant part: "The plaintiff's motion for civil contempt is GRANTED, and the court finds that the defendant, Vistron Corporation ... is in civil contempt of this Court's injunction order of May 15, 1981." Appendix at 82. Although the district court found that Vistron was in civil contempt of the court's earlier injunctive order, the court recognized that Thermice had not as of then actually terminated the contract. Appendix at 88–89. Moreover, because the district court noted that

Thermice had not sustained any damages, the district court concluded that it could make no award of damages. *Id.* Thus, it appears that the district court's order, although styled in terms of civil contempt, was no more than a declaration that, if Vistron were to terminate the contract as it indicated it intended doing, such action would be in violation of the May 15, 1981 injunctive order.

In *Interdynamics, Inc. v. Wolf,* 698 F.2d 157, 164 (3d Cir.1983) (Becker, J.), this court faced a strikingly similar factual situation. *Interdynamics* involved a district court's order which did not actually hold the appellant in contempt, but rather declared that the appellant *would be* in contempt if he proceeded to take certain actions. We held that the district court's order, although phrased as a contempt order, was actually a declaratory judgment, and we concluded that appellate jurisdiction was proper under 28 U.S.C. § 2201.[1] The holding of *Interdynamics* clearly controls the instant situation.

In the instant case, all parties recognized that Vistron had not actually terminated the contract at any time prior to the district court's contempt finding. Thermice chose not to wait until the termination actually occurred, but instead proceeded immediately to court in an attempt to prevent the termination. The district court recognized that Vistron had not actually terminated the contract, and the court properly refused to order any damages. Therefore, in accordance with the clear factual history of this case, we cannot construe the district court's order as anything but a declaratory judgment that Vistron would be in violation of the district court's May 15, 1981 injunctive order if it were to terminate the contract without cause prior to December 30, 1990.[2] We conclude that the order is ap-

---

1. 28 U.S.C. § 2201(a) states, in relevant part:
   In a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final

judgment or decree and shall be reviewable as such.

2. Because we construe the district court's order as a declaratory judgment explaining the parties' obligations under the May 15, 1981 order, we need not consider Vistron's argument that the district court's finding of civil contempt was inappropriate because the order of May 15, 1981 allegedly failed to meet the specificity require-

pealable as a final decision under 28 U.S.C. § 2201. *Interdynamics, Inc. v. Wolf,* 698 F.2d 157, 164 (3d Cir.1983).

### III.

■ The district court concluded that the contract was unambiguous, and therefore susceptible of only one reasonable construction. The question of whether the contract was ambiguous is subject to plenary review.

Interpretation of a contract is ordinarily a question of law for the courts. But when the contract is ambiguous, extrinsic evidence may be required to discern its meaning, transforming the question into one of fact to be resolved by the fact finder, except where the evidence and resulting inferences are uncontroverted. Whether a contract or consent decree requires extrinsic evidence in aid of interpretation is, of course, itself a question of interpretation subject to plenary review. The first task, therefore, is to determine whether the instrument by its terms unambiguously covers the dispute. The relevant search, as in contract interpretation, is not for the subjective intention of the parties "but what their words would mean in the mouth of a normal speaker of English, using them in the circumstances in which they were used."

*Fox v. U.S. Dept. of Housing, Etc.,* 680 F.2d 315, 319–20 (3d Cir.1982).

■ We begin our inquiry, therefore, by looking at the language of the contract and the 1977 amendment. Paragraph four of the contract states:

*Period:* This contract shall become effective upon its execution and shall remain in force for a period of ten (10) years from the Completion of the Facility plus an additional period of five (5) years thereafter unless and until cancelled by written notice by either party to the other specifying an effective date of cancellation subsequent to the expiration of the aforesaid ten (10) year period, which

written notice shall be given at least six (6) months in advance of the cancellation date specified therein.

All parties agree that prior to the 1977 amendment, the terms of the contract were clear and unambiguous. In its unamended version, what we shall call the "binding period" of the contract, lasted for ten years (from January 1, 1971 to December 30, 1980), and what we shall call the "option period" of the contract, commenced at the conclusion of the "binding period" and lasted for five years (from January 1, 1981 to December 30, 1985).

The relevant portion of the 1977 amendment to the contract states:

The period of the Contract as provided for in paragraph 4 thereof shall be extended for an additional ten (10) years from and after January 1, 1981, so that the period will continue until December 30, 1990, and all contract years commencing with the effective date of this amendment shall commence January 1, 1977.

Appendix at 21. The 1977 amendment extends "the period of the contract" for an additional ten years, and the amendment explains that, as a result of this extension, "the period" will continue until December 30, 1990.

Vistron argues that the 1977 amendment renders the contract reasonably susceptible to more than one construction. Under the construction proffered by Vistron, the amendment makes no change in the "binding period" of the contract, but instead substitutes a ten year "additional option period" for the original five year "option period." Under Vistron's interpretation, the "total period" (consisting of the "binding period" plus the "option period") is 20 years, and the "total period" will terminate in December 1990.

Our examination of the language of both the original contract and the 1977 amendment, leads us to conclude that Vistron's construction of the contract is untenable. The 1977 amendment clearly specifies that

---

ments peculiar to civil contempt orders. Moreover, the district court's injunction clearly required Vistron to perform its contract with Thermice with no leeway provided for Vistron

to avoid that obligation by devising new and different ways to thwart the court's order. *See In re Arthur Treacher's Franchise Litigation,* 689 F.2d 1150 (3d Cir.1982).

some period be *extended* for an *additional* ten years. Under Vistron's construction of the contract, the ten year "option period" is *substituted* for the five year "option period"; nothing is being *extended* for an *additional* ten years. Indeed, under Vistron's proffered construction of the contract, the "option period" would have been extended for an additional five years only (i.e., an additional five years beyond the original five years).

We therefore agree with the district court's conclusion, that the contract as amended is unambiguous. Although the 1977 amendment's use of "the period" would have been ambiguous if no further elaboration had been given—i.e., "the period" could have referred to the "binding period," the "option period," or "the total period" ("binding period" plus "option period")—this potential ambiguity was eliminated because the amendment also provided that "the period" would continue until December 30, 1990. Therefore, because "the period" which is being extended for an additional ten years will terminate on December 30, 1990, it is clear that the period being referred to is the "binding period" which was originally scheduled to terminate on December 30, 1980.

■■■ We conclude, as did the district court, that the amended contract is unambiguous.[3] In its amended version, the "binding period" of the contract is twenty years (from January 1, 1971 to December 30, 1990) and the additional "option period" remains unchanged in length, but postponed for ten years (running from January 1, 1990 to December 30, 1995).

### IV.

Even if we were to conclude that the contract is ambiguous, there would be no

**3.** Because we conclude that the contract was clear and unambiguous, the district court did not err in failing to consider extrinsic evidence of the parties' intent. *Brokers Title Co. v. St. Paul Fire & Marine Ins. Co.,* 610 F.2d 1174, 1178 (3d Cir.1979).

Vistron also argues that the district court improperly relied on extrinsic evidence in reaching its conclusion as to the proper construction of the contract. Our review of the district

grounds for reversing the judgment of the district court. The district court held, in the alternative, that even if the terms of the contract did not definitively determine the contract period, the contract still should not be construed any differently. On the basis of the limited factual evidence presented to the district court by both parties, we would be forced to conclude that the district court's construction of any ambiguity in the contract was not clearly erroneous.

■■■ Vistron today claims that it was improperly denied the opportunity to produce extrinsic evidence in support of its construction of the statute. However, our review of the record of the district court hearing leads us to conclude that both parties have waived their right to raise that issue on appeal. Vistron asserts that both it and Thermice had numerous witnesses present at the hearing before the district court. Vistron's Brief at 10. The record of the district court hearing makes it abundantly clear that both parties agreed with the court's suggestion that testimony from witnesses was unnecessary, and that the case should be decided after submission of short letter memoranda. Appendix at 68–70. Vistron freely elected to follow the procedure suggested by the district court. *Id.* Vistron, having previously declined to introduce additional evidence when it was before the district court, has waived its right to seek a remand for the purpose of now introducing any such evidence.

### V.

We construe the district court's order entered August 7, 1986 as a declaratory judgment that, if Vistron were to terminate its contact with Thermice prior to December 30, 1990 without cause, such a termi-

court's opinion reveals that the district court considered extrinsic evidence for the sole purpose of buttressing its *alternative holding,* that if the contract were ambiguous then Vistron's construction of the contract would nevertheless still be untenable. Appendix at 87. Moreover, any such error by the district court would have been harmless in light of our *de novo* conclusion which does not rely on any extrinsic evidence.

nation would be in violation of the district court's injunctive order of May 15, 1981. We affirm the district court's order, so construed.

BECKER, Circuit Judge, dissenting.

I agree with the majority that what we have before us is an appealable order.[1] At that point we part company. First, I believe that the judgment cannot stand because the original court order, on which the judgment before us depends, is too vague to form the basis of a contempt decree. Even if I am incorrect on this point, I believe that the judgment must be reversed because I disagree that the amended contract is unambiguous. In my view, a remand for fact finding is required. I also disagree with the majority's alternative holding (contained in Part IV) for I do not believe that Vistron waived the right to put on evidence. Further, I believe that the district court's conclusion that no evidentiary hearing could be meaningful derives from what is essentially the court's findings of fact on a disputed matter rendered without a hearing.

## I.

The subject of our review is a judgment of contempt. I believe that the court order on which the judgment is based is too vague to be the basis of a contempt decree.[2] The order states:

[I]t is hereby ORDERED and DECREED that commencing at 12:01 a.m. on Monday, May 18, 1981, defendant Vistron Corporation, its agents, servants, employees and attorneys and all persons acting in concert with them, are hereby ENJOINED to specifically perform its contract with Thermice Corporation dated October 8, 1970, as amended January 1, 1977, to supply liquid and solid carbon dioxide to Thermice Corporation pursuant to the terms of said contract until the termination date set forth in the contract (December 30, 1990), or until said contract has been canceled or otherwise terminated in accordance with its provisions, or until further Order of this Court.

In my view, the order does not comply with Fed.R.Civ.Pro. 65(d), which states in relevant part:

Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained;....

The Supreme Court has not hesitated to vacate orders which do not comply with the strictures of this rule. In *Schmidt v. Lessard*, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), the Court said:

As we have emphasized in the past, the specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood. Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."

*Id.* at 476, 94 S.Ct. at 715. *See also International Longshoremen's Association v. Philadelphia Marine Trade Association*, 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967) ("The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be

---

1. I agree that appellate jurisdiction is controlled by *Interdynamics v. Wolf*, 698 F.2d 157 (3d Cir. 1983) for I believe that the district court here resolved an uncertain obligation, and that the failure to permit immediate appeal would require Vistron actually to cause an injury in order to gain appellate review, a situation which does not benefit anyone. Unlike most contempt orders without sanction, the order involved here has a continuing impact. Furthermore, Vistron

having been told explicitly by the district court what it cannot do (according to the district court, a second time), the failure to abide by that order could possibly justify criminal contempt, and it would be unfair to force Vistron to incur that risk to obtain review.

2. This matter was clearly raised in the district court. *See* App. at 70–71a.

understood, it can be a deadly one."). *See generally* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2955 (Rule 65 should be enforced quite strictly). Moreover, applying Rule 65, this Court has held that conduct cannot be in contempt unless it was clearly prohibited. *Ford v. Kammerer*, 450 F.2d 279, 280 (3d Cir.1971). The language of Rule 65(d)

> strongly suggests that prohibited conduct will not be implied from [injunctive] orders; that they are binding only to the extent they contain sufficient description of the prohibited or mandated acts. The long-standing, salutary rule in contempt cases is that ambiguities and omissions in orders redound to the benefit of the person charged with contempt.

*Id. See also Quinter v. Volkswagen of America*, 676 F.2d 969, 974 (3d Cir.1982) (contempt must be shown by "clear and convincing evidence, and where there is ground [to] doubt the wrongfulness of the conduct of the defendant, he should not be adjudged in contempt") (quoting *Fox v. Capitol Co.*, 96 F.2d 684, 686 (3d Cir.1938)).

I believe that the district court's order violated Rule 65(d). The conduct prohibited in the original order was described entirely "by reference to ... [an]other document," the contract, and was highly general. Furthermore, the order explicitly permits cancellation of the contract in accordance with the terms of the contract, and thus incorporates terms which, by their very nature, are a source of ambiguity and confusion for the parties. Where the meaning of an order is in substantial dispute, it comports neither with basic fairness nor with the strict requirements of Rule 65 to hold a party in contempt for a purported violation of such an order.

Of course, if reference to the matters adjudicated in the prior case could clarify any ambiguities in the order, the injunction might withstand scrutiny. *See, e.g., In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1150, 1156–67 (3d Cir.1982) (using examination of prior court's opinion to find clarity in somewhat generally phrased order). However, it cannot be disputed that the matter at issue in this case, namely the meaning of the 1977 amendment, was not at issue in the prior case. *See* Transcript of Hearing on Motion for Entry of Contempt of Judgment, App. at 66a, (comments by the district court) ("The effect of the amendment" is "a question raised for the first time").

In sum, I do not believe that the district court's May 15, 1981 order spoke with sufficient clarity to justify the extraordinary remedy of a contempt citation. I therefore believe that the district court's judgment, which is a finding of contempt, cannot stand, hence, I would reverse.

## II.

Even if the district court's injunction had not run afoul of the salutary requirements of Rule 65, the contempt judgment still could not stand, at least without further proceedings in the district court. I find the terms of the contract ambiguous, as they are susceptible to more than one reasonable interpretation, and therefore the parties should be allowed to submit extrinsic evidence to support their respective interpretations. *Z & L Lumber Co. v. Nordquist*, 348 Pa. Super. 580, 502 A.2d 697, 700 (1985). I believe that the agreement is ambiguous on its face, as I find Vistron's interpretation to be a plausible one. However, even if the majority is correct that no ambiguity can be found on the face of the agreement, Pennsylvania law clearly requires a district court to look to any proffered extrinsic evidence to determine whether such ambiguity exists. *Z & L Lumber Co.*, 502 A.2d at 700; *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1010–13 (3d Cir.1980).

## A.

I do not deny that the majority's interpretation of the amendment is a reasonable one. I claim only that another plausible interpretation exists, rendering the agreement ambiguous.

As a means of avoiding Vistron's right to cancel during the period 1981 through 1990, Thermice has fashioned, and the majority has adopted, the argument that the 1977 amendment did not alter the "addi-

tional" term but that it *both* added a new "additional" ten year term running from January 1, 1981 through December 30, 1990, and preserved the original "additional" five year period, so that the 1970 contract became a twenty-five year agreement that would remain in effect through December 30, 1995. Under the majority's interpretation, therefore, the contract period extends until 1995—a ten year non-cancellable period beginning in 1981, and a five year "option" period beginning in 1991.

The majority, seizing upon the clause in the 1977 amendment providing that the period of the original contract should be *extended* for an additional ten years, has convinced itself that Vistron's proposed construction must be wrong because:

> Under Vistron's construction of the contract, the ten year "option period" is *substituted* for the five year "option period"; nothing is being *extended* for an *additional* ten years. Indeed, under Vistron's proffered construction of the contract, the "option period" would have been extended for an additional five years only (i.e. an additional five years beyond the original five years).

Maj. op. at 253 (emphasis in original). The majority has ignored, however, the impact of the very next clause of the contract: "The period ... shall be extended ... *so that the period will continue until December 30, 1990....*" (Emphasis added.) I find two flaws in the majority's approach.

First, the majority glosses over the ambiguity of the term "period." The language in the 1977 amendment specifically refers to the "period" of the contract. The majority apparently assumes that "period" refers only to the initial ten year term. Yet this ignores the fact that Paragraph 4 of the original agreement is itself entitled *"Period."* Thus the term could reasonably be read to encompass the entire time period defined in Paragraph 4, both the original initial ten year term and the "additional" five year term. The 1977 amendment would thus modify the *entire* period of the contract so that the contract would expire at all events on December 30, 1990, and the original "additional" five year term (i.e.,

the "option" period beginning January 1, 1981) would be replaced with a new "additional" ten year term. And it is during this "additional" term that either party may cancel with six months notice.

Second, the majority's argument is at odds with the language of the 1977 amendment, for the amendment refers only to extant terms, and its language purports to define and change the length of the entire contract period—which would of necessity result in modification of the original additional five year term.

In sum, it is certainly (at the very least) plausible to interpret the net result of the amendment to be a term of contract which expires no later than December 30, 1990. Notably, this comports with the language of the amendment itself. Had the parties intended to extend the contract for an additional five year option period after the ten year binding period, as the majority would have us believe, it seems unlikely they would have declared that "the period will continue until December 30, 1990," when they could easily have said "1995."

Thus a reading of the amendment standing alone leads me to the conclusion that its wording is ambiguous, and cannot properly be understood without the aid of extrinsic evidence. Hence, even if the injunction were not so unclear as to violate Rule 65, I would reverse and remand for an evidentiary hearing to resolve the dispute about the contract term and the cancellation rights.

### B.

The district court itself recognized, at least implicitly, that a failure even to look at extrinsic evidence creates the danger that the court's interpretation could run counter to the intent of the parties. The district court quoted our decision in *Mellon Bank*, in which we held that "external indicia of the parties' intent other than written words are useful, and probably indispensable, in interpreting contract terms." 619 F.2d at 1010. Thus the district court attempted to ground its finding of non-ambiguity on the extrinsic evidence that it deemed relevant, in addition to its reading of the document on its face.

The district court relied on Vistron's conduct during the original litigation in 1981 and 1982, after the disputed amendment had taken effect, in which Vistron attempted to cancel the contract for cause, without reference to its purported right to cancel with six months notice for any reason at all. The court reasoned that since Vistron did not contend at that time that it had this absolute right of cancellation, it could not then have believed that such a right existed.[3] The court viewed this conduct as "evidence of the understanding of the parties" that the right to cancel was not continued by the amendment to 1990.

While such evidence is most certainly relevant, since it is in sharp conflict with the representations and contentions of Vistron, it also clearly represents an exercise in fact finding by the district court, without a hearing. I believe that fact finding is required in this case, *see Kroblin Refrigerated Xpress v. Pitterich,* 805 F.2d 96, 101 (3d Cir.1986) (court must look to extrinsic evidence to determine whether an agreement is ambiguous); *Mellon Bank,* 619 F.2d at 1011–12, but I do not understand how such findings can be made without the aid of an evidentiary hearing. In *Mellon Bank* we made clear the importance of providing such a hearing to develop evidence of the parties' intentions, whenever a "reasonable alternative interpretation is suggested." *Id.* at 1011. Vistron was prepared to present testimony and evidence relating to its understanding of the amendment. The district court improperly denied Vistron this opportunity.

I concede that in the face of the district court's declaration that no evidentiary hearing was necessary Vistron made no formal objection to the lack of hearing. Yet Vistron in a series of memoranda and submissions vigorously maintained its intention to adduce evidence of intent. I thus do not read the transcript as evidencing a waiver of that very substantial right.

Moreover, it makes no sense to me to find a waiver here. Essentially, the parties are arguing over the meaning of a contract term. One side argues it clearly means blue. The other side argues it clearly means red. Since, as I have explained, neither color clearly stands out, the district court is supposed to receive evidence to determine what the contract really means. The court should not simply make up its mind on the basis of first or previous impressions. I doubt that a party must formally request fact finding to preserve the argument made repeatedly in its papers and in open court that the contract either favors that party or at least is ambiguous and requires fact finding. Such a situation is distinct from one in which a party actually refuses a fact finding opportunity offered by the judge.[4]

### III.

In conclusion, I would reverse outright or reverse and remand to the district court for any of three alternative reasons. First, I would vacate the finding of contempt because of the insufficiently clear notice provided by the original injunction. Second, I would hold the amendment to be ambiguous, and thus remand for factfinding to aid in its interpretation. Finally, even if the amendment is not ambiguous on its face, I would remand for an evidentiary

---

3. The court also relied on wording in its own memorandum opinion from the prior litigation, describing the "termination date" as December 20, 1990. I fail to see how dicta from the prior opinion can be helpful since the issue in the instant case was concededly not addressed by the district court in the first litigation. *See supra* at 255. Moreover, if relevant at all, I find the language in the district court's prior opinion, and the same language in the injunction itself, to directly contradict the district court's and the majority's holding that the contract actually extends to *1995.*

4. Indeed, without such a hearing, the following result obtains. The district court holds that a contract clearly favors A and not B. Before the court and on appeal, the parties each take the position, and only the position, that the contract clearly favors each of them and is unambiguous. If we accepted the majority's requirement, we would accept the notion that we could not adopt a middle ground in the situation hypothesized by holding that the contract favored neither party clearly. Even where a contract was ambiguous, we would have to assume that it was not, and decide whom the contract more likely supported.

258

hearing on whether a reasonable alternative interpretation exists. I respectfully dissent.