502 A.2d 697

**Z & L LUMBER COMPANY OF
ATLASBURG, a Corporation**

v.

**Thomas NORDQUIST, Donald Bott and Donald Samuels,
individually and d/b/a Venture Enterprises, a
partnership, Appellants,**

v.

**Frank TAYLOR, an individual, and Peoples Home Savings
and Loan, a corporation.**

Superior Court of Pennsylvania.

Argued May 15, 1985.

Filed Dec. 31, 1985.

582

Robert W. Deer, Washington, for appellants.

Cathy D. Campbell, Beaver Falls, for appellee.

Before SPAETH, President Judge, and ROWLEY and WIEAND, JJ.

WIEAND, Judge:

In July, 1981, Venture Enterprises, a partnership,[1] contracted to build a log home for Frank Taylor at a price of $34,924.45. To obtain materials for the job, Venture obtained a line of credit with Z & L Lumber Co. (Z & L), a building supply company. Before construction had been completed, Z & L commenced an action against Venture to recover a balance which Venture refused to pay. Venture joined Taylor as an additional defendant. It also joined Peoples Home Savings and Loan Association, which had agreed to advance the construction money. After Z & L's claim had been settled, the action continued for the purpose of adjudicating claims asserted against each other by Venture and Taylor.[2]

The case was tried non-jury before the Honorable Robert E. Kunselman, who rendered a verdict in favor of Taylor in the amount of $7,282.78. The court en banc subsequently modified the amount of the verdict by adding $5,246.00, which had been omitted by the trial judge, but otherwise affirmed the findings of the trial judge. Judgment was entered in favor of Taylor and against Venture for $12,528.78.

On appeal, Venture argues that the trial court erred in finding that Venture was contractually obligated to supply all labor and material except electrical and plumbing fixtures and carpeting. The written contract provided, inter alia, that "[Venture] agrees to provide all the materials as specified and to perform all the labor shown on the working drawings and described in the specifications...." The working drawings and specifications consisted of a series of ten documents appearing in a construction manual. The first six documents were drawings indicating construction of the foundation and exterior of the home. They specified

1. The partners were Thomas Nordquist, Donald Bott and Donald Samuels.

2. The original action had been commenced in Washington County by Z & L. After its claim had been settled, the action was transferred to Beaver County for trial of the cross-claims asserted by Venture and Taylor.

the types and sizes of materials to be used. The seventh and eighth sketches, entitled "elevations," portrayed the completed home according to its front and side views. The home as depicted in these renderings contained, inter alia, doors and windows, including frames, a garage door, and shingles. The ninth drawing portrayed the proper construction of the roof, and delineated the types and sizes of lumber needed to complete that portion of the home. The final document specified the quantity, type, and size of the logs that would be necessary to complete the entire home. The remainder of the construction manual provided generalized instructions on how to perform the more intricate tasks involved in constructing a log home. Thomas Nordquist, one of the Venture partners, enumerated the responsibilities of the parties in a letter to the construction lender. He said that Venture was responsible for a log kit f.o.b. delivered, the doors and windows, and "the interior framing and second floor framing and roof framing including interior knotty pine walls and ceiling of $1 \times 8$ U-Notch Tongue and Groove." Frank Taylor's responsibility, according to Nordquist's letter, included supplying carpeting, plumbing fixtures in the bath and kitchen, lighting fixtures, electric wiring for the first and second floor, and labor for all of the above. Based on this evidence, the trial court found that Venture was liable for costs of labor and materials except for electrical wiring and fixtures, plumbing fixtures and carpeting.

■ The findings of a trial court, approved by a court en banc, are entitled to the same weight as a jury's verdict and will not be disturbed on appeal if supported by adequate evidence. *Albert v. Lehigh Coal & Navigation Co.*, 431 Pa. 600, 610, 246 A.2d 840, 845 (1968); *Estate of Rudy*, 329 Pa.Super. 458, 465, 478 A.2d 879, 882 (1984); *Reed v. Wolyniec*, 323 Pa.Super. 550, 556, 471 A.2d 80, 84 (1983). An appellant challenging a trial court's findings bears the heavy burden of demonstrating that the trial judge committed a manifest error or a clear mistake. 16 Std.Pa.Prac.2d § 91:121 (1980). An appellate court, however, is not bound

by the trial court's conclusions of law derived from the underlying facts. *Lawner v. Engelbach*, 433 Pa. 311, 315, 249 A.2d 295, 297 (1969); *Linnet v. Hitchcock*, 324 Pa.Super. 209, 212–213, 471 A.2d 537, 539 (1984); *Interest of Miller*, 301 Pa.Super. 511, 515–516, 448 A.2d 25, 27 (1982).

Our review of the record discloses evidentiary support for the findings of the trial court. Appellant argues, however, that the letter written by Thomas Nordquist was extrinsic to the written contract and should not have been considered by the court. The trial court explained that the "specifications" were ambiguous and that the Nordquist letter would be considered in assisting it to interpret the written contract. We find no error in this ruling.

The fundamental objective of contract construction is to ascertain the intention of the parties. *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1131 (3d Cir.1969); *Robert F. Felte, Inc. v. White*, 451 Pa. 137, 143, 302 A.2d 347, 351 (1973); *Metzger v. Clifford Realty Corp.*, 327 Pa.Super. 379, 385, 476 A.2d 1, 5 (1984); 8 P.L.E. *Contracts* § 144 (1971). When the terms of the contract are clearly expressed, the intention of the parties must be determined from the language used. *East Crossroads Center, Inc. v. Mellon-Stuart Co.*, 416 Pa. 229, 230, 205 A.2d 865, 866 (1965); *Pennsylvania Turnpike Commission v. U.S. Fidelity & Guaranty Co.*, 412 Pa. 222, 231, 194 A.2d 423, 428 (1963); 8 P.L.E. *Contracts* § 161 (1971). However, "[w]here the language of the written contract is ambiguous, extrinsic or parol evidence may be considered to determine the intent of the parties." *Metzger v. Clifford Realty Corp., supra*, 327 Pa.Super. at 385, 476 A.2d at 5. See: *Herr Estate*, 400 Pa. 90, 94, 161 A.2d 32, 34 (1960); 8 P.L.E. *Contracts* § 161 (1971).

 The standard for determining the existence of an ambiguity was stated in *Metzger v. Clifford Realty Corp., supra*, as follows:

A contract will be found to be ambiguous:

if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being under-

stood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.

*Commonwealth State Highway and Bridge Authority v. E.J. Albrecht Co.*, 59 Pa.Commw.Ct. 246, 251, 430 A.2d 328, 330 (1981) (Quoting 8 P.L.E. CONTRACTS § 146 (1971)). Ambiguities may be either patent or latent. A patent ambiguity appears on the face of the instrument and arises from the defective, obscure, or insensible language used. *Steuart v. McChesney*, 498 Pa. 45, 444 A.2d 659 (1982). Latent ambiguities arise from extraneous or collateral facts which render the meaning of a written contract uncertain although the language, on its face, appears clear and unambiguous.

*Id.*, 327 Pa.Super. at 386, 476 A.2d at 5 (footnote omitted). A court, in making this determination, should hear the evidence presented by both parties and then decide whether "there is objective indicia that, from the linguistic reference point of the parties, the terms of the contract are susceptible of differing meanings." *Mellon Bank, N.A. v. Aetna Business Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir.1980). Extrinsic evidence may be used to determine the intent of the parties whether the ambiguity be patent or latent. See: *Metzger v. Clifford Realty Corp.*, *supra* (extrinsic evidence used to interpret patent ambiguity); *Kohn v. Kohn*, 242 Pa.Super. 435, 443, 364 A.2d 350, 354 (1976) (extrinsic evidence employed to construe latent ambiguity).

■ Ordinarily, the specifications of a construction contract will clearly denote the "kinds, quality, and quantity of work to be done, the details, time and manner of construction, without which the contract would be incomplete and ineffective." *Knelly v. Horwath*, 208 Pa. 487, 491, 57 A.

957, 958 (1904); *Cek v. Karinch*, 11 Lebanon 371, 379 (Pa.1967); 8 P.L.E. *Contracts* § 225 (1971). In this case, however, the parties ascribed differing meanings to the term "specifications" in the contract. Venture contended that the specifications were limited to the schematic drawings (sketches two through six) contained in the back of the construction manual. Taylor argued, on the other hand, that the specifications included all of the materials and labor necessary to construct the home as it appeared in the "elevations" (drawings seven and eight). According to Taylor, this included exterior doors and windows, an overhead garage door, and shingles. Taylor also contended that Venture had been obligated to provide and install items such as interior doors, knotty pine walls, interior partitions, and insulation.

Specifications, according to expert testimony offered by Venture, are not ordinarily limited to construction drawings. Instead, the materials necessary to complete a construction project are listed in a specifications booklet. Here, there was no such booklet, and the parties looked to the drawings made a part of the contract. The trial court could properly determine that under these circumstances there was a latent ambiguity in the written contract.

 Having found the contract ambiguous, the trial court could consider extrinsic evidence to determine the intent of the parties. See: *Metzger v. Clifford Realty Corp., supra*. Parol evidence which indicated the interpretation which the parties themselves had given to the contract, as manifested by their conduct after formation, was entitled to great weight in construing the agreement. *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir.1973); *Barcelona v. Fox Grocery Co. Employee's Pension Plan*, 483 F.Supp. 1128, 1132 (W.D.Pa.1980); *Maloney v. Glosser*, 427 Pa. 548, 552, 235 A.2d 607, 609 (1967); *Demharter v. First Fed. Sav. & Loan Ass'n of Pittsburgh*, 412 Pa. 142, 154, 194 A.2d 214, 220 (1963); *Commonwealth ex rel. Fleming v. Fleming*, 288 Pa.Super. 504, 509, 432 A.2d 626, 628 (1981); 8 P.L.E. *Contracts* § 165

(1971). "[The parties'] interpretation is entitled to great, if not controlling, influence, and will generally be adopted and followed by the courts, particularly when the parties' interpretation is made before any controversy, or when the construction of one party is against his interest." 8 P.L.E. *Contracts* § 165 (1971) (footnotes omitted). The construction which parties themselves place upon their contract can be gleaned from contemporaneous or subsequent writings expressly stating their interpretation of ambiguous terms. See: *Mellon Bank. N.A. v. Aetna Business Credit, Inc.,* *supra; Metzger v. Clifford Realty Corp., supra.* See also: 8 P.L.E. *Contracts* § 165 (1971).

■ The letter written by Nordquist was properly received by the trial court as an aid in determining the intention of the parties. It was sent by Nordquist, a Venture partner, in response to an inquiry by the construction lender and contained Nordquist's interpretation of the responsibilities of the parties under the terms of their agreement. Nordquist's letter supports the trial court's interpretation of the written contract.

■ Because Venture was required to provide a log home which, except for electric and plumbing fixtures, was substantially complete, Taylor was entitled to recover the cost of materials necessary to complete the work which Venture had left undone. Moreover, it was Venture who was liable to Z & L for most of the materials charged to its account by Taylor during construction. This was so in view of the trial court's finding that Venture had authorized Taylor, who had agreed to perform some of the labor himself, to purchase materials and charge the same to Venture's account. Except for electrical supplies purchased by Taylor, Venture was not entitled to a credit on account of purchases which he had made from Z & L.

■ The amount awarded by the court en banc, viz. $12,528.78, was arrived at by adding together the cost of the labor ($4,220.00) and materials ($8,251.03) necessary to complete Taylor's home, plus the amount which Taylor had

been required to advance to Z & L as a result of the settlement of its claim, and subtracting from the total thus obtained the cost of the electrical supplies purchased by Taylor from Z & L ($201.80), and the amount which Taylor owed on account of the contract price ($5,986.45). In an opinion filed pursuant to Pa.R.App.P. 1925(a) after an appeal had been filed, the court en banc observed that both the trial court and the court en banc had erred by omitting a bill for electrical supplies in the amount of $161.06 and by awarding to Taylor special damages which had not been pleaded in the amount of $642.56. Both of these errors accrued to Venture's benefit. The court en banc recommended to this Court that the judgment be modified by subtracting these amounts. We will accommodate this recommended correction.

The judgment previously entered in favor of appellee, Frank Taylor, and against the appellant, Venture Enterprises, is reduced to $11,725.16. As so modified, the judgment is affirmed.