Michael G. ANDERSON, Robert Bianco, Mary Pat Flaherty, Lamont Jones, Jr., Louis J. Laurenzi, Steve Mellon, and All Plaintiffs, Plaintiffs,

v.

PITTSBURGH PRESS COMPANY, Pittsburgh Press Dismissal and Death Benefits Plan, and Scripps Howard, Inc., Defendants.

Civ. A. No. 93–937.

United States District Court, W.D. Pennsylvania.

March 21, 1995.

Litman, Litman, Harris, Brown & Watzman, Roslyn M. Litman, Pittsburgh, PA, Daniel P. McIntyre, Falmouth, ME, for plaintiffs.

Volk, Frankovitch, Anetakis, Recht, John A. McCreary, Jr., Pittsburgh, PA, Baker & Hostetler, David G. Holcombe, Cleveland, OH, for defendants.

## *OPINION*

AMBROSE, District Judge.

Pending before the Court is the Motion of Plaintiffs, Robert Bianco, Mary Pat Flaherty, Lamont Jones, Louis Laurenzi, Steve Mellon and Michael Anderson, for Summary Judgment pursuant to Fed.R.Civ.P. 56. Plaintiffs initiated this civil action against the Pittsburgh Press Company, the Pittsburgh Press Dismissal and Death Benefits Plan, and Scripps Howard, Inc., on June 14, 1993. Plaintiffs are seeking certain dismissal and severance benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and vacation pay and

bonuses under the Pennsylvania Wage Payment and Collection Law, Pa.Stat.Ann. tit. 43 § 260.1 *et seq.* because their employment with the Pittsburgh Press Company [hereinafter the Press] was terminated on December 31, 1992.[1] (Complaint, ¶ 8) Jurisdiction is pursuant to 28 U.S.C. §§ 1331, 1367 and 29 U.S.C. § 1132(e). For the reasons set forth below, Plaintiffs' Motion for Summary Judgment will be granted in part and denied in part.

Plaintiffs raise the following issues in their motion. As to Count I of the Complaint, Plaintiffs Robert Bianco, Mary Pat Flaherty, Lamont Jones, Louis Laurenzi and Steve Mellon seek a ruling that they are "entitled to benefits under the Dismissal and Death Benefits Plan." (Plaintiffs' Brief, p. 2) All Plaintiffs seek a determination of the amount of the benefits they are due under the Dismissal and Death Benefits Plan.[2] Plaintiffs Anderson, Bianco, Jones, and Laurenzi also seek summary judgment with respect to vacation pay and bonuses. (Count III of the Complaint) The motion has been fully briefed by the parties.[3]

Defendants deny that they are obligated to pay any of the benefits sought by Plaintiffs. Specifically, Defendants argue that under the terms of the Death and Dismissal Benefits Plan, none of the Plaintiffs qualify for benefits. Defendants also argue that with respect to vacation pay and bonuses, the four Plaintiffs have not established that they have satisfied the terms of the written vacation pay policy and further that the four Plaintiffs are not entitled to vacation pay and bonuses

because the Post Gazette, the subsequent employer of the four Plaintiffs, paid the vacation benefits, "in part if not in whole." (Defendants' Brief, p. 18) Defendants also argue that to the extent that Plaintiffs seek entry of judgment against Scripps Howard, Inc., summary judgment must be denied because Scripps Howard, Inc. is not an employer within the meaning of either ERISA or the Wage Payment and Collection Law.[4]

 Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.1987). The dispute is

---

1. According to the Complaint, all the assets of the Press were conveyed to Blade Communications Inc. on this date.

2. This Court previously granted summary judgment in favor of Plaintiff Anderson regarding the existence of the Death and Dismissal Benefit Plan.

3. Plaintiffs have filed a Brief and a Reply Brief. Defendants have filed a Brief in Opposition. Although the briefing schedule set by this Court (Doc. 48) provided that "[t]he Responding party or parties are directed to file their Response and a Brief in Opposition on or before January 27, 1995. Briefs in Opposition are limited to 25 pages and any exhibits must be 25 pages or summarized with in 25 pages. Reply briefs must [be] filed with the court within five days from the filing of brief in opposition. Reply briefs are

limited to 10 pages," Defendants, without leave of court, filed a Sur-reply Brief. Defendants also filed, contrary to this Court's briefing schedule, exhibits which exceed "25 pages or summarized within 25 pages." Defendants filed approximately 190 pages of Exhibits with their Brief in Opposition to Summary Judgment. While Plaintiffs filed 89 pages of exhibits with their Motion for Summary Judgment, this was filed prior to the time the briefing schedule was set.

4. In their Reply Brief, Plaintiffs concede that "there is insufficient evidence to pierce the corporate veil and bind Scripps–Howard to the order sought." Plaintiffs therefore have withdrawn any motion to have Scripps Howard bound by Plaintiffs' proposed order.

genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is material when it might affect the outcome of the suit under the governing law. *Id.* Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

We first address Plaintiffs arguments concerning the Death and Dismissal Benefits Program. Defendants contend that according to the benefits booklets, an employee could not receive benefits from both the Death and Dismissal Benefits Program and a pension. Interestingly, Defendants rely not on the most recent booklet which contains a description of the benefit—the 1970 booklet—to support their argument, but rather Defendants rely upon the language contained in the 1967 booklet.

The 1970 booklet provides, in relevant part:

### DISMISSAL AND DEATH BENEFITS

The following schedule of dismissal and death benefits is entirely separate and unrelated to the pension plan described on previous pages. (Except in the case of an employe who elects a "years certain" or the joint and survivor option before retirement. In no case would both pension and "dismissal and death benefits" be paid.)

\* \* \* \* \* \*

1. Dismissal benefits. Will be paid because of dismissal for any reason other than self-provoked discharge or dishonesty.

2. Death benefits. In the event of the death of an employe, The Press will continue, as in the past, to make death payments to the person designated by the employe as his legal representative, with the exception noted above.

Exhibits to Defendants' Brief in Opp., Exhibit 3, PP 00144. The 1967 booklet provides:

### DISMISSAL AND DEATH BENEFITS

The following schedule of dismissal and death benefits is entirely separate and unrelated to the pension plan described on previous pages. (Except in the case of an employe who elects the joint and survivor option before retirement.) In no case would both pension and "dismissal and death benefits" be paid.

\* \* \* \* \* \*

1. Dismissal benefits. Will be paid because of dismissal for any reason other than self-provoked discharge or dishonesty.

2. Death benefits. In the event of the death of an employe, the Press will continue, as in the past to pay the death benefits to the person designated by the employe as his legal representative, with the exception noted above.

Exhibits to Defendants' Brief in Opp., Exhibit 1, PP 00121.

Defendants also offer the testimony of various Press employees which they allege support their interpretation that Death and Dismissal Benefits and pension benefits could not both be paid. (See e.g. Exhibits to Defendants' Brief in Opp., Manis Deposition (Ex. 9), Troan Deposition (Ex. 10), Koeberlein Deposition (Ex. 11)) Plaintiffs, on the other hand, argue that the provision means that "in the limited circumstance of employees electing certain pre-retirement pension coverage, employees cannot obtain both the pre-retirement coverage and the [Death and Dismissal Benefits]." (Plaintiffs' Reply Brief, p. 3)

When faced with a dispute concerning the interpretation of a document, a court interprets the document according to a two-step process. *In re Stendardo,* 991 F.2d 1089, 1094 (3d Cir.1993). This doctrine applies with equal force when a court is faced with a dispute concerning the interpretation of an ERISA severance plan. *Taylor v. Continental Group Change in Control Severance Pay Plan,* 933 F.2d 1227, 1232 (3d Cir.1991). *See also Alexander v. Primerica Holdings,*

*Inc.,* 967 F.2d 90 (3d Cir.1992). Initially, a court must determine, as a question of law, whether the terms at issue are ambiguous. *Taylor,* 933 F.2d at 1227, citing *Mellon Bank v. Aetna Business Credit, Inc.,* 619 F.2d 1001, 1011 (3d Cir.1980). In deciding whether a document is clear or ambiguous, a court does not simply determine whether, from its point of view, the words are ambiguous. *Sheet Metal Workers, Local 19 v. 2300 Group, Inc.,* 949 F.2d 1274, 1284 (3d Cir. 1991). A document may be found ambiguous if "it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." *Krizovensky v. Krizovensky,* 425 Pa.Super. 204, 624 A.2d 638, 642 (1993), citing *Z & L Lumber Co. of Atlasburg v. Nordquist,* 348 Pa.Super. 580, 502 A.2d 697, 700 (1985). Similarly, a "contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends." *Id.* The fact that the parties do not agree on the proper construction of the terms does not render a document ambiguous. *Id.* If the court determines that the terms at issue are ambiguous, then the interpretation is a question of fact. *Stendardo,* 991 F.2d at 1094.

 After carefully reviewing the language of the booklets, and the submissions of the parties, we find that the last manifestation by the Press, the 1970 booklet, is ambiguous. Particularly, we find the use of the word "no" in the sentence "In no case would both pension and 'dismissal and death benefits' be paid," to be troublesome. While Plaintiffs interpret the sentence to mean "in such a case both pension and 'dismissal and death benefits' would not be paid," it is also plausible that the sentence means that an employee either had to elect pension benefits or "death and dismissal benefits."[5] A question of fact exists as to the proper interpretation of the document. Summary judgment as to Count I of the Complaint must therefore be denied. Based on our disposition of the issue, we need not address the remaining arguments of the parties.

We next address whether Plaintiffs Anderson, Bianco, Jones, and Laurenzi are entitled to vacation pay. Defendants argue that the four Plaintiffs who are claiming entitlement to vacation pay have not established that they "left" the Press as required by the provisions of the 1985 Press employee handbook. Defendants also argue that Plaintiffs "completely ignore the fact that the vacation benefits which they received from the [Post Gazette] during 1993 and 1994 as a function of their service with the Press extinguishes their right to any recovery." (Defendants' Brief, p. 18) Defendants additionally assert, with respect to the liquidated damages provision of the Pennsylvania Wage Payment and Collection Law, that the Press has acted in good faith and therefore liquidated damages are inappropriate.

 Initially, we address whether Plaintiffs have demonstrated that they have satisfied the terms of the "vacation payment on termination policy;" particularly, whether they "left" the Press, as required by the 1985 Press employee handbook. The handbook provides:

### VACATION PAYMENT ON TERMINATION:

If you should die, or leave The Press (except during or after an extended leave of absence, or with less than two weeks notice of resignation), vacation payment will be made according to the following schedule:

\* \* \* \* \* \*

B. (1) If you have one or more years of service and leave The Press (except during or after an extended leave of absence, or with less than two weeks notice of resignation), and have not taken your vacation, payment for the vacation time you would have taken that year plus the accrued bonus payment will be made to you. In addition, you will be paid for vacation time

---

**5.** It is also plausible, in light of the description of the "Death Benefit," that the sentences in the parentheses only refer to the Death Benefit.

and bonus accrued toward the following year's vacation, on a pro-rate [sic] basis, based on the number of weeks worked during the calendar year in which you leave. (2) If you should die before taking vacation due you, payment for the vacation time you would have taken that year, plus vacation bonus, will be made to your designated beneficiary, or to your estate if you have not designated a beneficiary. Otherwise, no such payment will be made.

Defendants' Exhibits to Brief in Opp., Exhibit 17, p. 27–28.

Defendants argue that "[n]owhere, however, is the term 'leaving' defined. Plaintiffs merely assume that the change which occurred in the ownership of the Press is the same as 'leaving' the Press for purposes of the vacation pay policy." (Defendants' Brief, p. 17) Defendants assert that Plaintiffs have failed to establish that they "left" the Press' employ under circumstances which would entitle them to unused vacation pay.

The phrase "leave the Press" is not ambiguous. Indeed, although Defendants argue that the term "leaving" is not defined, they offer no other explanation as to what this term might mean. "Leave," is generally understood to mean "to go away or depart from as a place, a person or a thing: to leave a job." *See* The Random House College Dictionary, 763 (Rev.Ed.1982). It is not disputed that the four Plaintiffs are no longer employed by the Press. That the four Plaintiffs were subsequently employed by the Post Gazette after it purchased the assets of the Press is of no consequence. In fact, an exhibit offered by Defendants is illustrative of the practice of the Press with respect to vacation pay and bonuses:

Q: So if you were an employee who slotted in at four weeks because of your service, if you left on June 30, you got two weeks of vacation pay?

A: Correct.

Q: For any reason if you left, right?

A: Correct.

\* \* \* \* \* \*

Q: And the fact that you happened to have another job that you went to that offered vacation benefits didn't affect your entitlement to vacation that you had earned at the Press, did it?

A: That's correct.

Defendants' Exhibits to Brief in Opp., Exhibit 10, p. 46. Additional support for the assertion that vacation pay was awarded when an employee left, *for any reason,* is also offered by Plaintiffs. For example, Plaintiffs' Exhibit 108 at PP 00201–00202, states:

If you have not taken your vacation in any year and leave for any reason other than those listed above [relating to extended leave of absences], payment for the vacation time you would have taken that year plus the accrued bonus payment will be made to you. In addition, you will be paid accrued vacation time and bonus payment, on a pro rata basis, based on the number of weeks worked during the calendar year in which you leave.

Plaintiffs' Exhibits in Support of Summary Judgment, Exhibit 108. See also, Plaintiffs' Exhibits in Support of Summary Judgment, Exhibit X at 30.

We find that there are no genuine issues of material fact concerning whether the four Plaintiffs left the Press' employ for the purpose of the vacation pay policy. We therefore conclude that the four Plaintiffs "left" the employ of the Press as provided by the terms of the "vacation payment on termination" provision.

■ Defendants next argue that there are disputed issues of material fact concerning what, if any, benefits are due because the four Plaintiffs were paid vacation benefits by the Post Gazette, in accordance with an alleged agreement between the Press and the Post Gazette. Plaintiffs, on the other hand, argue that since Plaintiffs never assented to this delegation of contractual duty, that delegation is ineffective. (Plaintiffs' Reply Brief, p. 8)

Defendants specifically direct this Court's attention to the collective bargaining agreement (dated January 1, 1991) between the PG and the Newspaper Guild which provides, in relevant part:

All former Press employees will receive three weeks of vacation in 1993 or two

weeks plus a lump sum, which will be between $525 and $860, from the vacation pool of $105,000. All employees hired prior to January 1, 1993, will receive an extra week of vacation in 1993 or a lump sum of at least $525 to a maximum of $860. Employees must indicate a choice by May 1; if no choice is indicated, the employee will receive his/her lump sum payment on or about July 1. Part-time employees will receive a proportionate share.

Effective January 1, 1994:

All former Press employees will receive credit, for vacation purposes only, for their service with the Pittsburgh Press Company.

Defendants' Exhibits to Brief in Opp., Exhibit 22, p. 30.

Defendants also cite to the Asset Exchange Agreement between the Press and the Post Gazette and claim that under the terms of this Agreement, the Post Gazette "agreed to assume 'any liability for vacation pay for any Press employee' who became an employee of the PG." (Defendants' Brief, p. 9) This Asset Exchange Agreement provides, in relevant part:

8.3 *Indemnification by Herald and Blade.*

(a) From and after the Closing Date, subject to the limitations set forth in Section 8.4 of this Agreement, Herald and Blade hereby covenant and agree to indemnify and hold harmless Press and Scripps ... from and against any and all losses, liabilities, damages, demands, claims, suits, action, judgments or causes of action, assessments, penalties, attorneys' fees, any and all expenses incurred in investigating, preparing or defending against any litigation, commenced or threatened, or any claim whatsoever, and any and all amounts paid in settlement of any claim or litigation (collectively "Press Damages"), asserted against, resulting to, imposed on or incurred or suffered by Press and/or Scripps, directly or indirectly, as a result of or arising from the following (collectively, "Press Indemnifiable Claims"):

\* \* \* \* \* \*

(x) Any liability for vacation pay for any Press employee who becomes a Herald employee.

Defendants' Exhibits to Brief in Opp., Exhibit 21, p 46–47.

We do not believe the terms of this section of the Agreement support the assertion of the Press that the Post Gazette "agreed to assume 'any liability for vacation pay for any Press employee' who became an employee of the PG." (Defendants' Brief, p. 9) Rather, the passage cited by the Press indicates that the Post Gazette [Herald and Blade] agreed to "*indemnify and hold harmless [the] Press and Scripps ...* for any liability for vacation pay for any Press employee." (See Defendants' Exhibit 21, supra) Defendants have taken the quote "any liability for vacation pay for any Press employee" out of context. The Post Gazette, at least in that passage, was not assuming liability for vacation benefits; rather, the Post Gazette was assuming responsibility to indemnify the Press for any liability *the Press* may incur for vacation pay for any Press employee.

Defendants argue that the considerable amount of vacation time that Plaintiffs, as former Press employees who were subsequently employed by the Post Gazette, received during 1993 compensates them for the vacation and bonuses earned in 1992 at the Press. Defendants further emphasize that this considerable amount of vacation time would not have been awarded if the former Press employees had been treated as new Post Gazette employees. Interestingly, there is no indication that the four Plaintiffs were even informed of, let alone assented to, the proposition that the vacation they were receiving at the Post Gazette was in lieu of the vacation benefits and bonuses owed to them by the Press. While we recognize that Defendants maintain that "during and after the strike, the Press did its utmost to reward the loyalty of its many dedicated employees, including the present plaintiffs," and that it attempted to ensure that "as many as possible of [its employees] retained employment," this simply does not excuse the obligation of the Press to pay vacation benefits and bonuses that were earned by the four Plaintiffs while they were Press employees. Summary

judgment will therefore be granted on the issue of whether the four Plaintiffs are entitled to vacation pay and bonuses. Since Defendants indicated in their Brief in Opposition that "Plaintiffs' calculation of the amount of vacation benefits that they earned in 1992 as a result of their prior years of service with the Press appears to be correct," (Defendants' Brief, p. 18), we find that Plaintiffs are entitled to the following: Plaintiff Anderson is entitled to 4 weeks vacation pay and $420.00 vacation bonus; Plaintiff Bianco is entitled to 3 weeks vacation pay and $420.00 vacation bonus; Plaintiff Jones is entitled to 2 weeks vacation pay and $320.00 vacation bonus; Plaintiff Laurenzi is entitled to 5 weeks vacation pay and $420.00 vacation bonus.[6]

 However, with respect to the issue of liquidated damages under the Pennsylvania Wage Payment and Collection Law, Pa. Stat.Ann. tit. 43 § 260.10, we find that there are genuine issues of material fact concerning whether Defendants in "good faith contest[ed] or disput[ed] ... any wage claim." Pa.Stat.Ann. tit. 43 § 260.10 (1992). Summary judgment must therefore be denied as to this issue. We will reserve judgment on the issue raised by Plaintiffs concerning prejudgment interest on the ERISA benefits (if necessary) and attorneys' fees until a time when all damages are finally determined.

### ORDER OF COURT

**AND NOW,** this 21st day of March, 1995, after careful consideration and for the reasons set forth above,

It is hereby **ORDERED** that the Motion for Summary Judgment (Docket # : 46) is **GRANTED** in part and **DENIED** in part. Specifically, the Motion for Summary Judgment filed by Plaintiffs Bianco, Flaherty, Jones, Laurenzi and Mellon on the issue of Plaintiffs' entitlement to Death and Dismissal Benefits and the amount thereof is **DENIED.** The Motion for Summary Judgment filed by Plaintiffs Anderson, Bianco, Jones and Laurenzi on the issue of entitlement to vacation pay and bonuses is **GRANTED** as

to Defendant the Pittsburgh Press Company. It is therefore **ORDERED** that Plaintiff Anderson is entitled to 4 weeks vacation pay and $420.00 vacation bonus; Plaintiff Bianco is entitled to 3 weeks vacation pay and $420.00 vacation bonus; Plaintiff Jones is entitled to 2 weeks vacation pay and $320.00 vacation bonus; Plaintiff Laurenzi is entitled to 5 weeks vacation pay and $420.00 vacation bonus.

The Motion for Summary Judgment filed by Plaintiffs Anderson, Bianco, Jones and Laurenzi on the issue of liquidated damages under the Pennsylvania Wage Payment and Collection Law, interest and attorneys' fees is **DENIED,** without prejudice.

appropriately be made after resolution of all issues.

---

**6.** Although Plaintiffs ask this Court to order Defendants to immediately pay these benefits, we find that the award of damages would more