J-A26021-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| SBA TOWERS II LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WIRELESS HOLDINGS, LLC AND | : | No. 325 WDA 2018 |
| JEFF MACALARNEY | : | |

Appeal from the Order Entered February 8, 2018
In the Court of Common Pleas of Blair County Civil Division at No(s):
2016 GN 01215

BEFORE: BENDER, P.J.E., SHOGAN, J., and MURRAY, J.

CONCURRING & DISSENTING MEMORANDUM BY MURRAY, J.:

FILED MARCH 19, 2019

I agree with the Majority that Appellant's appeal is properly before this Court pursuant to Pa.R.A.P. 311(a)(4). However, I respectfully disagree with the Majority's conclusion that the parties' lease terms, regarding Appellant's access to the property, were ambiguous. Accordingly, I concur and dissent.

I note the relevant standards of review:

Appellate courts review a trial court order refusing or granting a preliminary injunction for an abuse of discretion. This standard is applied as follows:

> [O]n an appeal from the grant or denial of a preliminary injunction, we do not inquire into the merits of the controversy, but only examine the record to determine if there were any apparently reasonable grounds for the action of the court below. Only if it is plain that no grounds exist to support the decree or that the rule of law relied upon was palpably erroneous or misapplied will we interfere with the decision of the Chancellor.

See Brayman Constr. Corp. v. DOT, 13 A.3d 925, 935-936 (Pa. 2011)

(citations omitted).

With respect to contract interpretation:

"The interpretation of a contract is a matter of law and, as such, we need not defer to the trial court's reading of the [a]greement."

It is also well[-]established that under the law of contracts, in interpreting an agreement, the court must ascertain the intent of the parties.

In the cases of a written contract, the intent of the parties is the writing itself. If left undefined, the words of a contract are to be given their ordinary meaning. When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself. . . .

With specific reference to what constitutes "ambiguity" in the context of contract interpretation, our Supreme Court has opined as follows:

Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts. We will not, however, distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity.

Lenau v. Co-Exprise, Inc., 102 A.3d 423, 429-430 (Pa. Super. 2014)

(citations omitted).

There are two types of contract ambiguity:

"[A] latent ambiguity arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and

unambiguous." . . . "A patent ambiguity is that which appears on the face of the instrument, and arises from the defective, obscure, or insensible language used."

Betz v. Erie Ins. Exch., 957 A.2d 1244, 1254 n.2 (Pa. Super. 2008) (citations and parentheses omitted).

A contract may be deemed ambiguous "[i]f, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." [Contract] language is not rendered ambiguous "if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends[.]" Mere disagreement between the parties on the meaning of language or the proper construction of contract terms does not constitute ambiguity.

Id. at 1253-1254 (citations omitted).

Further, our Supreme Court

long ago emphasized that '[t]he parties [have] the right to make their own contract, and it is not the function of this Court to re-write it, or to give it a construction in conflict with . . . the accepted and plain meaning of the language used.' "'It is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves, without regard to its wisdom or folly.'" In 17A C.J.S. Contracts § 296(3), appears the following:

The court may not rewrite the contract for the purpose of accomplishing that which, in its opinion, may appear proper, or, on general principles of abstract justice . . . make for [the parties] a better contract than they chose, or saw fit, to make for themselves, or remake a contract, under the guise of construction, because it later appears that a different agreement should have been consummated in the first instance . . . .

Steuart v. McChesney, 444 A.2d 659, 662 (Pa. 1982) (citations omitted).

- 3 -

Instantly, the pertinent paragraph in the parties' lease states:

> 18. <u>Access to Leased Space/Premises.</u> [Appellant] shall have at all times during the initial term or renewal term the right of access to and from the Leased Space and all utility installations servicing the Leased Space on a 24 hours per day/7 days per week basis, on foot or by motor vehicle, including trucks, and for the installation and maintenance of utility wires, cables, conduits and pipes over, under and along the right-of-way extending from the nearest accessible public right-of-way.

Appellant's Motion for Temporary Injunction, 4/15/16, Exhibit B (Land Lease, 12/21/09, at 4) (Paragraph 18).

I agree with Appellant that the language of Paragraph 18 is clear. See Lenau, 102 A.3d at 429; Appellant's Brief at 12-13. In providing Appellant "the right of access" to the property and all utility installations servicing the leased space, Paragraph 18 delineates the hours of access ("on a 24 hours per day/7 days per week basis") and the manner of access ("on foot or by motor vehicle, including trucks"). Paragraph 18 also states that Appellant may access the property to install and maintain utility equipment. Notably, Paragraph 18 does not set forth any restrictions on Appellant's access to the property, and it is silent as to whether Appellees may, in the future, impose any restrictions. While the Majority interprets this silence as an ambiguity as to whether Appellant's access may be restricted, the silence, in my view, clearly evinces the parties' intent not to restrict Appellant's access. Thus, I would conclude that Paragraph 18 is free of any latent or patent ambiguity. See Betz, 957 A.2d at 1254 n.2.

That Appellees may have become concerned about security — however

reasonable a concern — is not relevant.[1]  See Lenau, 102 A.3d at 429 ("When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself.").  Appellant keeps expensive equipment and property on the leased premises, and the parties, both of whom are sophisticated business entities, could have included in the lease terms allowing Appellees to impose security procedures.  See Newman Dev. Group of Pottstown, LLC v. Genuardi's Family Mkt., Inc., 98 A.3d 645, 659 (Pa. Super. 2014) (en banc) (finding no error in trial court's decision not to reduce landlord's verdict for future damages to present value, where commercial contract was negotiated by sophisticated business people who had the ability to control, decide and design remedies for breach).  However, in this case, the parties included no such provision in the lease, and neither the trial court nor the Majority should rewrite that which the "parties have made for themselves, without regard to its wisdom or folly."  See Steuart, 444 A.2d at 662.

Further, the Majority's rationale — that a contract term is ambiguous because it did not specify whether there were any restrictions or caveats — would allow a party to alter its rights or contractual obligations, or the rights

---

[1] Appellees' dual arguments — that (1) its "check-in procedures" did not interfere with Appellant's "24/7 access" and (2) the lease was ambiguous because it did not define "24/7 access" — are in conflict.  See Appellees' Brief at 5, 9-10, 15.  Under the former rationale, Appellees argue that it complied with the lease terms (which presumably are clear), whereas in the latter, they aver that the lease terms are not clear.

or obligations of the other party, by arguing that the contract was silent as to whether that alteration was permissible. This Court's prior findings of contract ambiguity have generally arisen from an existing contract term that could be interpreted in more than one way. See, e.g., Int'l Diamond Imps., Ltd. v. Singularity Clark, L.P., 40 A.3d 1261, 1278 (Pa. Super. 2011) (lease provision, which permitted tenant to assign the lease to sub-letter, was ambiguous because it could be interpreted to have two meanings: that "assignment without [the landlord's] permission required the" tenant to show the sub-letter's creditworthiness, and that a showing of creditworthiness was "required only to relieve the [tenant] of liability under the lease following assignment;" this Court further noted "[m]uch hinges on the use of the semicolon at the end of the first clause, and the immediately following clause beginning 'provided.'"); Betz, 957 A.2d at 1252 (insurance policy term, "the action of water on limestone or similar rock formations," was a patent ambiguity because "similar rock formations" was reasonably susceptible of different construction, where the "policy language fails to describe in what manner rock formations other than limestone must be 'similar' to limestone and further, fails to name any type of rock other than limestone"); Metzger v. Clifford Realty Corp., 476 A.2d 1, 7 (Pa. Super. 1984) (contract had a patent ambiguity because the phrase, "the purchaser's right to 'terminate the operation of the business' can refer to either liquidation of the business by the purchaser, or sale of the business by the purchaser, or both"); Z & L Lumber

Co. v. Nordquist, 502 A.2d 697, 699-701 (Pa. Super. 1985) (contract term where the defendant "agrees to provide all the materials as specified and to perform all the labor shown on the working drawings and described in the specifications," was a latent ambiguity where defendant "contended that the specifications were limited to the schematic drawings (sketches two through six) . . . " but additional defendant argued "that the specifications included all of the materials and labor necessary to construct the home as it appeared in the 'elevations' (drawings seven and eight)").

In sum, although an ambiguity could, in another scenario, arise from the silence in a contract as to a particular term, Appellees in this case have failed to articulate a basis for finding ambiguity in Paragraph 18 of the lease, e.g., unclear wording or punctuation, the impossibility of enforcement of the contract term as written, or language in another paragraph that would make Paragraph 18 confusing or unworkable.[2]

---

[2] Because I would conclude that Paragraph 18 clearly conveys the parties' intent, I would not consider the terms of Paragraph 15 ("the Hold Harmless Clause") for context or guidance as to the interpretation of Paragraph 18. See Majority Memorandum at 10-11. However, even if Paragraph 15 would be considered, I would opine that its terms, which define the circumstances in which Appellees could be held liable for damages, is not relevant to the question of what actions Appellees could take to better protect themselves from liability.

For the foregoing reasons, I would reverse in part the order of the trial court.[3]

---

[3] Like the Majority, I would affirm the portion of the trial court's order prohibiting Appellees from physically blocking Appellant's access to the property. See Majority Memorandum at 3.