J-A08010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WELLS FARGO INSURANCE SERVICES USA, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 612 WDA 2018 |
| EDGEWOOD PARTNERS INSURANCE CENTER, SEAN ANDREAS, ZACHARY MENDELSON, CHARLES YORIO, PHILLIP WAKIN, JANICE ZEWE, SALLY KRAUSS, KURT KARSTENS AND PETER KOSTORICK | : | |

Appeal from the Order Entered April 3, 2018
In the Court of Common Pleas of Allegheny County
Civil Division at No(s):  No. GD-17-14022

BEFORE:  PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY PANELLA, P.J.:                    **FILED OCTOBER 25, 2019**

Wells Fargo Insurance Services USA, Inc., (hereinafter "WFIS") appeals from the order entered on April 3, 2018, in the Allegheny County Court of Common Pleas denying its petition for special and preliminary injunction.[1] Specifically, WFIS contends the trial court erred in failing to enforce restrictive covenants, including non-compete provisions, that Appellees Sean Andreas, Zachary Mendelson, Charles Yorio, Phillip Wakin, Janice Zewe, Sally Krauss, Kurt Karstens and Peter Kostorick ("Individual Appellees") signed while they were employed by various companies.  After thorough review, we affirm.

---

[1] This is an interlocutory appeal as of right.  **See** Pa.R.A.P. 311(a)(4).

The relevant facts and procedural history, as best can be discerned from the record, are as follows. WFIS is a national commercial insurance brokerage business. WFIS's business is predicated on fostering close relationships between it and its employees as well as its employees and its clients.

WFIS is a wholly owned subsidiary of ACO Brokerage Holdings Corporation ("ACO"). In turn, until November 30, 2017, Wells Fargo held all of the shares of ACO. Wells Fargo then sold its shares of ACO to USI. As a result, WFIS became a wholly owned subsidiary of USI. WFIS has since legally changed its name to USI Insurance Services National.

The Individual Appellees were all high-level employees of WFIS. The Individual Appellees resigned from their employer throughout September and October of 2017. Immediately thereafter, they went to work for Edgewood Partners Insurance Center ("EPIC"), which, as a full-service national commercial insurance brokerage firm, is in a similar if not identical business to WFIS. Around the time the Individual Appellees began working for EPIC, they sent e-mail announcements to customers and brokers of their former employer, which included, *inter alia*, marketing material for EPIC, new contact information, and identification of their new employment at EPIC. Upon receipt of these e-mails, if there was a follow-up question directed at the Individual Appellees, they would provide an answer to that question.

Several carriers or clients that received information from the Individual Appellees initiated broker of record ("BOR") letters, identifying that they were moving their business from WFIS to EPIC. Those letters stated that the

carriers and clients had not been solicited nor induced by the individual Appellees.

On October 13, 2017, WFIS filed a complaint asserting that Individual Appellees had violated various restrictive covenants that governed their behavior after their employment with WFIS ended. WFIS also sought to enjoin the Individual Appellees from allegedly continuing to violate the restrictive covenants.

The trial court entered a temporary restraining order, directing Individual Defendants from soliciting WFIS's employees or clients. This order remained in effect until the trial court was able to hold a hearing on WFIS's request for a preliminary injunction. After a two day hearing, held in November 2017, the trial court ultimately denied WFIS's application for a preliminary injunction. After the trial court denied its motion for reconsideration, WFIS filed this timely appeal.

WFIS raises the following four issues:

1) Did the trial court abuse its discretion or misapply the law in holding that WFIS did not have a protectable business in enforcing the restrictive covenants contained in the Individual Appellees' employment agreements because WFIS's former parent company, Wells Fargo & Company, sold its ownership interest in WFIS to USI Insurance Services, LLC, where WFIS continued to operate in the commercial insurance brokerage business?

2) Did the trial court abuse its discretion or misapply the law in holding that multiple communications sent by the Individual Appellees to current WFIS clients, which included, among other things, marketing materials touting their new employer, EPIC, did not amount to client solicitation in violation of their respective

employment agreements and that WFIS did not suffer irreparable harm as a result of said solicitation?

3) Did the trial court abuse its discretion or misapply the law in refusing to enforce the non-accept provisions of the Individual Appellees' employment agreements?

4) Did the trial court abuse its discretion in not addressing WFIS's claim that EPIC and Individual Appellees improperly solicited WFIS's employees in violation of their employment agreements?

*See* Appellant's Brief, at 3-5.

We review the denial of a preliminary injunction for an abuse of discretion. *See Duquesne Light Company v. Longue Vue Club*, 63 A.3d 270, 275 (Pa. Super. 2013) (citation omitted).

The standard of review applicable to preliminary injunction matters is "highly deferential". This "highly deferential" standard of review states that in reviewing the grant or denial of a preliminary injunction, an appellate court is directed to "examine the record to determine if there were any apparently reasonable grounds or the action of the court below."

*Id*. (citation omitted) (formatting altered). Conversely,

we will interfere with the trial court's decisions regarding a preliminary injunction only if there exist no grounds in the record to support the decree, or the rule of law relied upon was palpably erroneous or misapplied. It must be stressed that our review of a decision regarding a preliminary injunction does not reach the merits of the controversy.

*Santoro v. Morse*, 781 A.2d 1220, 1225 (Pa. Super. 2001).

To establish a right to a preliminary injunction, a party must demonstrate six "essential prerequisites":

1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

- 4 -

2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings;

3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

4) that the activity it seeks to restrain is actionable, that its right to relief is clear, and that the wrong is manifest, or, in other words, must show that it is likely to prevail on the merits;

5) that the injunction it seeks is reasonably suited to abate the offending activity; and,

6) that a preliminary injunction will not adversely affect the public interest.

*Warehime v. Warehime*, 860 A.2d 41, 46-47 (Pa. 2004) (quotation marks and citation omitted). "The burden is on the party who requested preliminary injunctive relief." *Id*., at 47. Further, a trial court has apparently reasonable grounds for its denial of injunctive relief where it finds that the petitioner has not satisfied any one of the "essential prerequisites." *Id*., at 46. Therefore, we may affirm if the trial court was correct in concluding that WFIS failed to establish any one of the six prerequisites.

We focus on the trial court's analysis of the fourth prerequisite, whether WFIS established a clear right to relief, as it is controlling. The trial court concluded, *inter alia*, that WFIS failed to demonstrate that EPIC or the Individual Appellees solicited WFIS's employees or clients in violation of their non-solicitation agreements. *See* Trial Court Opinion, 10/02/18, at 6 (non-

paginated opinion). The trial court found this to be a "close question." *Id*., at 7.

Despite this disposition, the court found that "WFIS solely relied on emails sent by the [Individual Appellees] to clients to inform the clients that they were moving to a new company." *Id*., at 6-7. The court ascertained that "these emails sent by the [Individual Appellees] informing clients of their impending move do not rise to the level that would be deemed solicitation." *Id*., at 7. "This is especially true when the contract entered into … did not specifically define the term 'solicitation.'" *Id*. Further, as to the "non-acceptance" provisions, the court found that such clauses, as contained within the Individual Appellees' agreements, were "overbroad and therefore an unreasonable restraint on trade." *Id*., at 7-8.

Essentially, the trial court found that WFIS had failed to establish that the Individual Appellees had breached non-solicitation covenants. Contract interpretation is a question of law; therefore, this Court is not bound by the trial court's interpretation. *See Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007). "In construing a contract, the intention of the parties is paramount and the court will adopt an interpretation which under all circumstances ascribes the most reasonable, probable, and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished." *Charles D. Stein Revocable Trust v. General Felt Industries, Inc.*, 749 A.2d 978, 980 (Pa. Super. 2000) (citation omitted).

In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language of the contract was chosen carelessly.

When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent. The language of a contract is unambiguous if we can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends. When terms in a contract are not defined, we must construe the words in accordance with their natural, plain, and ordinary meaning. As the parties have the right to make their own contract, we will not modify the plain meaning of the words under the guise of interpretation or give the language a construction in conflict with the accepted meaning of the language used.

On the contrary, the terms of a contract are ambiguous if the terms are reasonably or fairly susceptible of different constructions and are capable of being understood in more than one sense. Additionally, we will determine that the language is ambiguous if the language is obscure in meaning through indefiniteness of expression or has a double meaning. Where the language of the contract is ambiguous, the provision is to be construed against the drafter.

*In re Jerome Markowitz Trust*, 71 A.3d 289, 301 (Pa. Super. 2013) (citation omitted).

When a contract is found to be ambiguous, "extrinsic or parol evidence may be considered to determine the intent of the parties." *Z & L Lumber Co. of Atlasburg v. Nordquist*, 502 A.2d 697, 700 (Pa. Super. 1985) (citations omitted). "While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact." *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004) (citation omitted).

In relevant part, the non-solicitation clause contained within the "Wells Fargo company" agreement prohibits an employee, for a period of two years following termination for any reason, from soliciting, participating in, or promoting the solicitation of any of the company's clients, customers, or prospective customers with whom he or she had material contact for the purpose of providing products or services that are in competition with the company's products or services. *See*, *e.g.*, Wells Fargo Non-Solicitation Agreement, at 2 (non-paginated). However, none of the agreements in the record define "solicitation."

Solicitation is defined as "[t]he act of asking for or trying to obtain something from someone." www.lexico.com/en/definition/solicitation, last accessed 9/24/19. The most relevant of five definitions provided by Black's Law Dictionary (8th Ed. 2004) is "[a]n attempt or effort to gain business." In contrast, WFIS contends that the Individual Appellees' e-mails were actions that were taken "to awake or incite to action, or conduct [that was] intended to and calculated to incite the desired act." *Meyer-Chatfield v. Century Business Servicing, Inc.*, 732 F.Supp.2d 514, 522 (E.D. Pa. 2010) (internal quotation marks omitted).

We conclude that, as it is used in the relevant covenants, the term "solicitation" is not ambiguous. When used with other employees as the object, the agreements clearly prohibit the Individual Appellees from obtaining the other employees' services for a competing business concern. Similarly,

when used with clients or customers as the object, the agreements clearly prohibit the Individual Appellees from attempting to gain their business for a competing business concern.

It is important to note that all of these definitions require a specific state of mind. Pursuant to these definitions, a person cannot solicit without *intending* to obtain something from the other person. As a result, to determine that a person has engaged in solicitation, the finder of fact must find that the person intentionally acted in a manner that they believed would result in obtaining something from the other person.

Here, the trial court did not explicitly define solicitation. Instead, it merely noted that the agreements at issue do not explicitly define solicitation. However, nothing in the court's analysis establishes that it used a definition contrary to our conclusion above. We therefore conclude that the trial court did not commit an error of law.

We turn to the trial court's application of the law to the evidence of record. As noted above, we apply a highly deferential review of the court's factual findings. **See Duquesne Light Company**, 63 A.3d at 275. The court found that WFIS had failed to present sufficient evidence to support a finding that either the Individual Appellees or EPIC had solicited or continue to solicit employees or clients. **See** Trial Court Opinion, 10/2/18, at 6-7. This finding is explicitly a finding of a *lack* of evidence, not a finding that Individual Appellees had established a lack of solicitation. As petitioner, WFIS bore the burden of

proving every prerequisite for a preliminary injunction. **See Warehime**, 860 A.2d at 66.

Turning to the record, we note that it is uncontested that the Individual Appellees sent e-mail communications to clients that were utilizing WFIS's services. Those e-mails varied, with some merely describing that the sender was moving on to employment with EPIC and providing new contact information, others described in detail EPIC's business operations and website's URL, while a few even included EPIC's marketing materials. Many of the e-mails suggested contacting the individual sender if the recipient had any further questions. It is further uncontested that some of WFIS's clients transferred their business to EPIC and signed BOR letters stating they had not been solicited and were moving their business voluntarily.

While the court is not explicit as to its exact reasoning, applying our highly deferential standard of review we conclude that the court could have reasonably found that the e-mails sent by the Individual Appellees to clients were not intended to obtain the clients' business. As WFIS repeatedly asserts, the insurance industry is an industry heavily reliant on relationships. **See**, **e.g.**, Appellant's Brief at 7; **see also** Complaint, 10/13/17, at ¶ 1. It is not unreasonable to find that 1) the Individual Appellees had relationships with the clients they sent e-mails to; 2) the e-mails were intended to alert these clients of the Individual Appellees' change in contact information; and 3) the e-mails were intended to serve the social function of informing social

relationships of a significant change in life circumstances. We therefore conclude there is an apparently reasonable basis for the trial court's conclusion.

WFIS cites to a series of federal cases, most of which were adjudicated outside of the state of Pennsylvania, in support of its argument to the contrary. However, it only cites to two non-precedential decisions from our Court. In both decisions, we affirmed orders *granting* preliminary injunctions. As such, in both cases our standard of review required us to apply the highly deferential standard of review in favor of the petitioner.

Turning to the issue of soliciting employees from WFIS, the trial court found that WFIS has failed to present sufficient evidence on this point as well. WFIS suggests that the Individual Appellees "admitted to meeting with, discussing, and conferencing with one another about the opportunity at EPIC[;] this conduct was intended to incite action and cause the employees to join the new EPIC team." Appellant's Brief, at 46.

However, WFIS does not point to any specific evidence indicating that one employee solicited another. Instead, WFIS summarily concludes that the Individual Appellees "admitted to meeting with, discussing, and conferencing with one another about the opportunity at EPIC, and this conduct was intended to incite action and cause the employees to join the new EPIC team." *Id*., at 44. WFIS cites to testimony that one Appellee had meetings and conference calls with other Individual Appellees about a potential move to EPIC. *See*

N.T., 11/17/17, at 183-85. Eventually that same Appellee made an individual decision to move to EPIC and "discuss[ed] that decision and the facts that contributed to that decision with [other Individual Appellees.]" *Id*., at 184. However, by that point, the Individual Appellees, already cognizant of EPIC's interest, had met with EPIC, and even did so a group, coming to be "known as the group of seven." *Id*., at 183. Therefore, given the chronology, we cannot say that the trial court's analysis was unreasonable.

On the question of the non-accept provisions, the trial court held, *inter alia*, that the specific clauses were an "unreasonable restraint on trade." Trial Court Opinion, 10/02/18, at 8 (citation omitted). WFIS claims that the **Diodato** case relied upon by the trial court is distinguishable from the present case because: 1) the plaintiff in **Diodato** was terminated; 2) that plaintiff was greatly impacted by the restrictive covenant's ability for him to earn a living; 3) the third parties in that case (i.e., the former clients) unilaterally sought the plaintiff's services. **See Diodato v. Wells Fargo Insurance Services, USA, Inc.**, 44 F.Supp.3d 541 (M.D. Pa. 2014).

WFIS does not present a convincing reason to disregard the trial court's reliance on **Diodato**. First, WFIS, again, cites to no controlling case law on this issue. Second, the "termination" present in **Diodato** is hardly distinct from the affidavits indicating that Mark Susco, then senior vice president and managing director of WFIS, told the Individual Appellees to have a "Plan B" regarding employment when the effective sale of WFIS was being

contemplated. ***See, e.g***., Affidavit of Sean K. Andreas, at 3. Third, while the possible impact of an individual's ability to earn a living is a relevant consideration in a restrictive covenant analysis, we reiterate that the trial court found the Individual Appellees' actions were not solicitations. Therefore, the non-accept provisions effectively bar WFIS's clients from doing business with the Individual Appellees under *any* circumstance. As a result, we agree that the non-accept clauses "more broadly restrain[] free trade. By its express terms, the provision purports to restrict the liberty of third parties who, of their own volition, unilaterally seek" the Individual Appellees' services. ***Diodato***, 44 F.Supp.3d at 570.

Accordingly, we are of the opinion that WFIS "has not shown an interest so compelling as to warrant a blanket prohibition on [the Individual Appellees'] acceptance of *unsolicited* business from former customers, restricting … the free will of the businesses that [they] formerly serviced." ***Id***. (emphasis in original). Our highly deferential standard of review leads us to the conclusion that the trial court has not abused its discretion, and we affirm the trial court's finding to not enforce the non-accept provisions.

Although the trial court found several bases in its conclusion that WFIS was not entitled to a preliminary injunction, we affirm its decision and conclude that WFIS has failed at least one of the "essential prerequisites" necessary for a preliminary injunction. In accordance with the specific restrictive covenants binding the Individual Appellees coupled with the facts

of this case and given the Individual Appellees' behavior not constituting "solicitation" as well as the overbroad scope of the non-acceptance provision, the activity WFIS seeks to restrain is not actionable, and WFIS has not demonstrated that its right to relief is clear. ***See Warehime***, 860 A.2d at 46-47. Thus, the trial court did not err in denying WFIS's petition for a preliminary injunction.

Order affirmed.

Judge McLaughlin joins the memorandum.

Judge Stabile concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/25/2019